1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN MAE POLK, | CASE NO. 1:11-cv-00728-AWI-BAM PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| PITTMAN, et al., | (ECF No. 33) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

## Findings and Recommendations

### I.    Screening Requirement

Plaintiff Susan Mae Polk ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On April 9, 2012, Plaintiff's first amended complaint was dismissed, with leave to amend.  (ECF No. 22.)  Currently before the Court is the second amended complaint, filed June 8, 2012.  (ECF No. 33.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

1

do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at , 129 S. Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; Moss, 572 F.3d at 969.

Further, under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955).

## II.   Second Amended Complaint Allegations

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the Valley State Prison of Women ("VSPW") in Chowchilla. Although Plaintiff was previously been provided the legal standards that apply to her complaint and ordered to file a complaint in compliance with Federal Rules of Civil Procedure 18 and 20, the second amended complaint complains allegations against sixteen defendants, alleges incidents that occurred from 2007 to 2011, and attempts to hold defendants liable under a theory of supervisory liability. Plaintiff alleges violation of her right to free speech and retaliation under the First Amendment, right to remain silent under the Fifth Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and due process under the Fourteenth Amendment. Plaintiff is seeking declaratory and injunctive relief, and monetary damages.

Plaintiff alleges that in 2005, prior to being transferred to VSPW she was spit upon by another inmate and told that inmates at VSPW were planning to kill her with "padlocks in socks." Upon arriving at VSPW on February 27, 2007, Plaintiff informed her counselor, Joachim, of the threats she had received, requested to be placed in protective custody, and to be transferred to Corona. (Sec. Am. Compl. 4, ECF No. 33.) Plaintiff also informed Joachim that VSPW inmates had threatened her, punched her, and spat on her in the yard. (Id. at 4-5.)

On March 15, 2007, Plaintiff informed Defendant Logan of these incidents and that her cell mate was threatening to rape and murder her and demanding money. Defendant Logan laughed and refused Plaintiff's request for protective custody. Plaintiff documented the threats in a letter to Joachim. Joachim was transferred so, on April 25, 2007, Defendant Keith did a brief pre-committee interview and thought Plaintiff was in the Mental Health Services Delivery System "MHSDS" when she was not. Defendant Keith did not have time for Plaintiff's safety concerns and thought Plaintiff did not have a choice about being in MHSDS when she does. Relying on the probation officer's report and recommendation for sentencing, which allegedly was highly biased and laced with hearsay, Defendant Keith prepared a recommendation and summary which embellished the errors contained in the probation officer's report. (Id. at 5.)

Plaintiff submitted a declaration and rebuttal letter which also expressed Plaintiff's safety concerns. Defendant Keith never provided Plaintiff with notice of the committee hearing so she could rebut his recommendation and attempt to persuade the committee to transfer Plaintiff. On May 3, 2007, the committee assigned Plaintiff to C yard. (Id. at 6.)

At the time Plaintiff arrived on C Yard, Defendant Scott was Captain the yard. Upon arriving on the yard, Plaintiff was taken to the office and, based upon statements in the report that Plaintiff hated Jews and law enforcement officers, Defendants Gerber and Mason said that was enough for them to hate Plaintiff. Defendants Gerber and Mason refused to assign Plaintiff to protective custody. (Id.) Defendant Mason taunted Plaintiff about her safety concerns and asked her if she was wearing a wire, which Plaintiff took as an accusation that she was a whistle blower, an allegation that was in the probation officer's report. (Id. at 6-7.) Defendants Mason and Gerber forced Plaintiff into a cell where inmates Hammond and Murphy tortured her for about four hours by asking her to

3

confess the crime that she committed and told her the only way she would leave VSPW was on a stretcher. Plaintiff stood at the door of the cell the entire time calling for help, while guards sauntered by and inmates cheered. Plaintiff states that Defendant Pittman found Plaintiff's situation hilarious and stirred up the inmates.

Plaintiff alleges that inmates Hammond and Murphy were spraying Plaintiff with cleaning solution, lifting up her dress, and punching her in the kidneys. Id. at 7. Around 9:00 p.m., Defendant Hall came to the cell where Plaintiff was standing screaming for help. Defendant Hall took Plaintiff to the day room and had Plaintiff examined by a nurse. Plaintiff told Defendant Hall what had been going on and asked for protective custody. Defendant Hall told Plaintiff that if she wanted to stay out of the cell, Plaintiff had to say she was going to hurt herself. When Plaintiff refused to say she wanted to hurt herself, and Defendant Hall had Plaintiff returned to the cell. (Id.) Once back in the cell, inmates Hammond and Murphy continued their conduct until about 12:00 a.m., when inmate Hammond threw Plaintiff against the door jamb splitting open her scalp. (Id. at 7-8.) Defendant Pittman came to the door and refused to open it until the lieutenant on duty arrived. A nurse dressed Plaintiff's wound and she was placed in the administrative segregation unit ("ASU"). (Id. at 8.)

On May 5, 2007, Defendant Scott came to see Plaintiff and informed her that she better change her story or she would never get out of VSPW. An Institution Classification Committee hearing was held on May 9, 2007. Plaintiff gave a brief summary of the events from the time Plaintiff was threatened while awaiting trial to receiving the laceration on her head to Defendants Scott and Neumann. (Id.) Defendant Neumann stated that on March 7, 2007, Defendant Kunkel had placed Plaintiff in MHSDS. (Id. at 8-9.) Plaintiff advised him that she had refused Defendant Kunkel's offer and his statement was false. Plaintiff had been evaluated for trial and was found to have no mental disorder. Defendant Neumann stated that Plaintiff had been in an MHSDS facility at VSPW, which Plaintiff claims was false. Plaintiff submitted a complaint to Defendant Williams and Dr. White. Approximately one month later, Defendant Hall submitted a report stating she had found Plaintiff at the door of her cell hitting herself. (Id. at 8.)

On May 9, 2007, Plaintiff was released to C yard and refused to go. Defendant Mason

4

refused Plaintiff's pleas not to send her to C yard, and Defendant Neumann stood by as Plaintiff was handcuffed to a wheelchair by Defendants Mason and Moore and returned to ASU.  On May 15, 2007, Plaintiff was released to D yard.  (Id. at 9.)

On May 14, 2007, Defendant Gerber wrote Plaintiff up for refusing to lock in on May 3, 2007, after she had filed a grievance against him and other officers regarding the incidents on May 3 and 4.  Defendant Logan was assigned to hear Plaintiff's rule violation even though he had a conflict of interest.  Plaintiff was found guilty of interfering with a peace officer in performance of his duties without being able to submit a statement.  The finding was endorsed by Defendant Scott. Plaintiff was also written up for refusing to lock up in C yard on May 9, 2007.  She was found guilty and this was endorsed by Defendant Scott.  Plaintiff alleges that normally refusing to lock up due to safety concerns is not a rule violation.  (Id. at 10.)

Plaintiff alleges that on March 7, 2007, she met with Defendant Kunkel for about five minutes.  He offered legal help and to write nice things in her C file if she hired his friend to handle her appeal.  Plaintiff refused.  Plaintiff alleges that she was unaware that Defendant Kunkel was performing a mental health evaluation and he submitted a false report.  (Id. at 11.)

Before being escorted to C yard on May 3, 2007, Dr. White and Defendant Harry approached Plaintiff on the yard and offered "lifer groups."  Plaintiff told them her defense was based on actual innocence and she did not need a lifer group.  Defendant Harry offered for Plaintiff to come in for informal chats and she refused.  Defendant Harry placed an evaluation in Plaintiff's file although he did not inform her that she was being evaluated.  Plaintiff alleges that MHSDS requires lengthy delays in going through check points and waiting in a room full of mentally ill violent inmates.  (Id. at 12.)

On June 2, 2007, Plaintiff alleges she was choked by a cell mate, placed in ASU, and transferred soon after.  (Id. at 12-13.)  Plaintiff was transferred back to VSPW on September 23, 2009, and began receiving passes for MHSDS although she did not request them.  Plaintiff signed a refusal for MHSDS on October 7, 2007, but on October 29, 2007, Plaintiff received a pass stating that Defendant Williams wanted to talk to her and she refused.  (Id. at 13.)  Defendant Williams has not responded to Plaintiff's letters.  (Id. at 14.)

1    Plaintiff alleges that Defendants Mason and Gerber retaliated against her on May 3, 2007,

2    by placing her in a "bad room" to punish her for being a whistle blower.  This policy has been given

3    the nod by Defendant Cate.  It is an open secret that inmate informers offer to get trouble makers in

4    line for the guards, like Defendants Gerber, Mason, and Scott.  (Id. at 18.)

5    Plaintiff's remaining allegations set forth unrelated incidents that occurred during 2010 and

6    2011, and will not be summarized as they are not properly joined in this action.

7    **III.   Discussion**

8        **A.   First Amendment**

9    The Court construes Plaintiff's allegations that her First Amendment right to free speech to

10   criticize the government was violated as a retaliation claim.  A viable claim of retaliation in violation

11   of the First Amendment consists of five elements: "(1) An assertion that a state actor took some

12   adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such

13   action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

14   reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir.

15   2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

16       **1.   Defendants Gerber and Mason**

17   Plaintiff alleges that Defendants Gerber and Mason asked her if she was wearing a wire and

18   stated that they hated her because they believed she made anti-semetic and anti-law enforcement

19   statements.  To the extent that Plaintiff attempts to allege a retaliation claim based upon her belief

20   that Defendants Gerber and Mason thought she was a whistleblower, Plaintiff's allegations are vague

21   and the complaint is devoid of any factual allegations to support a claim of protected conduct.  While

22   Plaintiff alleges that she was denied protective custody because of these statements, the decision not

23   to place Plaintiff in protective custody was made by the classification committee, and there are no

24   allegations in the complaint that Defendants Gerber or Mason were on this committee.  Plaintiff fails

25   to state a retaliation claim based upon the failure to place her in protective custody.

26   Additionally, while Plaintiff alleges that Defendants Gerber and Mason placed her in a "bad

27   cell" due to her anti-semetic and anti-law enforcement comments, Plaintiff states that she told

28   Defendants Gerber and Mason that she did not make such comments.  Further, the second amended

1   complaint fails to allege that the actions of Defendants Gerber and Mason chilled Plaintiff's First

2   Amendment rights and did not reasonably advance a legitimate correctional goal.  Plaintiff fails to

3   state a retaliation claim against Defendants Gerber and Mason.

4                      **2.      Defendants Scott, Hall, and Neumann**

5          Plaintiff alleges that Defendants Scott, Hall, and Neumann violated her right to criticize the

6   government by contriving to find that she was mentally ill.  However, based upon the allegations

7   contained in Plaintiff's complaint, the question of Plaintiff's mental health was at issue.  During her

8   criminal trial she underwent a mental health evaluation.  The allegation that prison officials found

9   Plaintiff appropriate to receive mental health services does not support a plausible claim that this

10  finding was because of Plaintiff's protective conduct.  Plaintiff's disagreement with the findings of

11  the mental health professionals is not sufficient to state a cognizable claim.  Plaintiff has failed to

12  show that Defendants Scott, Hall, or Neumann took any adverse action because of her criticism of

13  government officials or that her placement in MHSDS did not reasonably advance a legitimate

14  correctional goal.

15                     **3.      Gerber, Scott, and Logan**

16         Plaintiff alleges that Defendants Gerber, Scott, and Logan violated the First Amendment by

17  filing rule violation reports for conduct that was not an offense following her complaints of staff

18  misconduct.  While Plaintiff alleges that the reports were in retaliation for her filing grievances, the

19  reports were based upon conduct that Plaintiff admits occurred.  In her second amended complaint,

20  Plaintiff alleges that Defendants Gerber and Mason "forced" her into a cell.  Plaintiff's claims

21  against Defendant Scott appear to be based on her allegation that Defendant Scott told her that she

22  better change her story about the incidents that occurred on May 3 and 4 or she would never get out

23  of VSPW, and he later approved the committee finding that Plaintiff was guilty of a rule violation.

24  This is insufficient to state a plausible claim that the findings were approved by Defendant Scott

25  because of any protected conduct by Plaintiff.  Additionally, there are no factual allegations that

26  Defendants Gerber, Scott, and Logan were aware that Plaintiff had filed a complaint prior to the rule

27  violation reports being submitted.

28         According to Plaintiff's second amended complaint, the grievance against Defendants Logan

and Keith, which she filed on May 3, 2007, was misplaced by prison staff and never received. Plaintiff did not file a grievance against Defendant Gerber until May 14, 2007.  Although Plaintiff alleges that normally refusing to lock in based on expressed safety concerns would not be written up as a rule violation, she states the protocol is to provide protective custody or alternately to arrange bed or yard moves if an inmate agrees to sign a non-enemy chrono.  However, Plaintiff's requests for protective custody had been considered and denied by the classification committee.  Plaintiff's refusal to lock in was not due to a specific safety concern due to her cell assignment, but her general concern that she would be at risk anywhere she was housed on the yard.  Plaintiff fails to state a plausible claim that Defendants Gerber, Scott, and Logan filed the rule violation reports in retaliation for her filing a grievance against them.

### B.    Eighth Amendment

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Plaintiff alleges that falsification of her records and holding a classification hearing without her being present constituted cruel and unusual punishment in violation of the Eighth Amendment. However, these allegations do not rise to the level of depriving Plaintiff of the 'minimal civilized measure of life's necessities."  While Plaintiff claims that the reports are false, the false reports themselves do not subject Plaintiff to any substantial risk of serious harm that would constitute cruel and unusual punishment.  Additionally, while Plaintiff complains that she was not present during the classification committee meeting, she did submit a rebuttal letter to the recommendation that was

considered by the committee.  Plaintiff's allegations fail to demonstrate that not being present at the classification committee meeting subjected her to a substantial risk of serious harm.

Further, Plaintiff's allegations that Defendants Gerber and Mason asked her if she was wearing a wire and said that her prior statements were enough to make them hate her are insufficient to state a cognizable Eighth Amendment claim.  Verbal harassment and threats do not constitute a violation of the Eighth Amendment.  Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (harassment); Oltarzewski v. Ruggiero, 830 F.2d 136, 138 (9th Cir. 1987) (harassment); Gaut v. Sunn, 810 F.2d 923, 925 (9th 1987) (threats).

## 1.   Failure to Protect

Plaintiff also contends that Defendants Keith, Logan, Gerber, Mason, Pittman, and Hall violated the Eighth Amendment by being deliberately indifferent to Plaintiff's safety concerns and failing to place her in protective custody.[1]  Prison officials are required "to take reasonable steps to protect inmates from physical abuse."  Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982) (abrogated on other grounds by Sandin v. O'Connor, 515 U.S. 472 (1995)).

Plaintiff's allegations that she informed Defendants Keith, Logan, Gerber, and Mason that she was in danger and they disregarded her concerns, and that Defendant Hall placed her back in the cell after finding Plaintiff drenched in cleaning solution and being informed of the conduct of Plaintiff's cell mates, are sufficient to state a claim for failure to protect.  However, Plaintiff fails to state a failure to protect claim against Defendant Pittman.  While Plaintiff alleges that Defendant Pittman found her situation hilarious and stirred up the inmates, this does not state a plausible claim that Defendant Pittman was aware that Plaintiff was at a substantial risk of serious harm and failed to act.  The possibility that Defendant Pittman engaged in unlawful conduct is insufficient to state a claim.  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; Moss, 572 F.3d at 969.

## C.   Fourteenth Amendment

### 1.   Substantive Due Process

---

[1] Plaintiff claims that Defendants incited further violence against her by failing to place her in protective custody, and failed to reasonably respond to her allegations of abuse and requests to be placed in protective custody. These allegations are part of Plaintiff's failure to protect claim and do not constitute separate violations under the Eighth Amendment.

Plaintiff claims that the failure of prison officials to place her in protective custody violated her due process rights.  To the extent that Plaintiff attempts to raise a substantive due process claim based upon the allegations that she was at a risk of harm and should have been placed in protective custody, she fails to state a claim.  Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims."  Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted) overruled on other grounds by Unitherm Food Systems, Inc. V. Swift –Eckrick, Inc., 546 U.S. 394 (2006); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).  In this case, the Eighth Amendment "provides [the] explicit textual source of constitutional protection . . . ." Patel, 103 F.3d at 874.  Therefore, the Eighth Amendment rather than the Due Process Clause of the Fourteenth Amendment governs Plaintiff's claims.

### 2.    Procedural Due Process

Plaintiff's allegations that Defendants violated her right to due process by filing false reports, finding Plaintiff guilty of rule violations, holding a classification meeting without her being present, housing her in a cell with other inmates, and fabricating mental health records fail to state a cognizable due process claim.  The Due Process Clause protects against the deprivation of liberty without due process of law.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393 (2005). In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought.  Wilkinson, 454 U.S. at 221, 125 S. Ct. at 2393. The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence.  Sandin v. Conner, 515 U.S. 472, 480, 115 S. Ct. 2293, 2298 (1995). A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484, 115 S. Ct. at 2300).

### a.    Prison Records

The Due Process Clause itself does not contain any language that grants a broad right to be

free from false accusations, but guarantees certain procedural protections to defend against false accusations.  Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986).  However, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Nor is there a property or liberty interest in the documents contained in an inmate's central file.  Plitt v. Gonzalez, No. 1:08-cv-01352-BLW-LMB, 2011 WL 3813099, *5 (E.D.Cal. Aug. 26, 2011).  Plaintiff cannot state a due process claim based upon her allegations that the reports or mental health records in her file contain false information.

### b.    Housing Assignment

Plaintiff alleges that prison officials failed to house her in the protective housing unit or transfer her to Corona.  There is no substantive liberty interest in being housed in a particular prison. Olim v. Wakinekona, 461 U.S. 238, 245 (1983); White v. Lambert, 370 F.3d 1002, 1013 (9th Cir. 2004) (overruled on other grounds by Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010).  Neither the initial decision assigning the inmate to a particular prison nor a subsequent transfer to a different prison implicate the Due Process Clause.  Olim, 461 U.S. 244-45; see Moody v. Daggett, 429 U.S. 78, 88 f. 9 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976).

Housing an inmate in the general population does not "impose atypical and significant hardship in relation to the ordinary incidents of prison life."  Keenan, 83 F.3d at 1088.  A prisoner does not have a constitutional right to a particular classification while incarcerated.  Hernandez v. Johnson, 833 F.2d 1316, 1318 (9th Cir. 1987).  Since there is no constitutional right to a particular classification while incarcerated, no liberty interests exists in Plaintiff's placement into protective custody.

### c.    Administrative Segregation

To the extent that Plaintiff attempts to allege a liberty interest due to being placed in administrative segregation, the Due Process Clause does not "create a liberty interest in freedom from administrative segregation."  Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point

1   in their incarceration.  Toussaint, 801 F.2d at 1091 (quoting Hewitt v. Helms, 459 U.S.460, 468

2   (1983)).  The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free

3   from administrative segregation or solitary confinement.  See May v. Baldwin, 109 F.3d 557, 565

4   (9th Cir.1997).

5                            d.      **Mental Health Program**

6         While Plaintiff alleges that she was placed in the MHSDS program against her will and this

7   subjected her to long delays as she went through checkpoints and endure waiting in the office with

8   violent and mentally ill inmates, these conditions do not show that placement in the program

9   imposed atypical and significant hardship in relation to the ordinary incidents of prison life.  By

10  Plaintiff's own admission she was housed in the general population even though she had been

11  designated as MSDSD, the conditions Plaintiff describes are similar to what any inmate would

12  experience during her incarceration.  Additionally, the decision to place Plaintiff in the MHSDS was

13  not made by the defendants accused of failure to protect and therefore any potential claim is not

14  properly joined in this action.

15        **D.      Supervisory Liability**

16        Plaintiff sets forth allegations that Defendants Cate and Miller were responsible for the

17  operation of the prison and welfare of the inmates, and Defendant Scott was directly responsible for

18  the officers under his supervision.  Government officials may not be held liable for the actions of

19  their subordinates under a theory of *respondeat superior*.  Iqbal, 129 S. Ct. at 1948.  A supervisor

20  may only be held liable for the actions of his subordinates under section 1983 if he "participated in

21  or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List,

22  880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff fails to allege facts to show that Defendants Cate,

23  Miller, or Scott directed or participated in a violation of her rights or knew of a violation and refused

24  to act.

25        **E.      Conspiracy**

26        To the extent that Plaintiff is attempting to allege that the defendants engaged in a conspiracy

27  to violate her civil rights, a conspiracy claim brought under section 1983 requires proof of "'an

28  agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423,

                                          12

441 (9th Cir. 2001) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Oklahoma</u>, 866 F.2d 1121, 1126 (9th Cir. 1989)).  Plaintiff's second amended complaint is devoid of any factual allegations to support the existence of a conspiracy to violate Plaintiff's rights.

### F.   Official Capacity

Plaintiff brings this action against all defendants in their official capacities.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  <u>Aholelei v. Dept. of Public Safety</u>, 488 F.3d 1144, 1147 (9th Cir. 2007).  A suit brought against prison officials in their official capacity is generally equivalent to a suit against the prison itself. <u>McRorie v. Shimoda</u>, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, prison officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." <u>McRorie</u>, 795 F.2d at 783 (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985).  The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. <u>Clement v. Gomez</u>, 298 F.3d 898, 905 (9th Cir. 2002) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989); <u>see</u> <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>Waggy v. Spokane County Washington</u>, 594 F.3d 707, 713 (9th Cir. 2010).

To prove liability for an action policy the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." <u>Waggy</u>, 594 F.3d at 713.  Liability for failure to act requires that Plaintiff show that the "employee violated the plaintiff's constitutional rights;" the agency "has customs or policies that amount to deliberate indifference;" and "these customs or policies were the moving force behind the employee's violation of constitutional rights." <u>Long</u>, 442 F.3d at 1186.

Plaintiff alleges that Defendants Cate and Miller continued a policy set in place of discrediting safety concerns as a figment of mental illness and using inmate enforcers to keep whistle blowers in line and suppress criticism.  While Plaintiff sets forth conclusory allegations regarding her subjective impressions of prison officials actions, she fails to allege any facts to show that such

13

1  policies actually exist or that Defendants Cate and Miller were aware of any such policies and were

2  deliberately indifferent.

3        **G.**    **MHSDS Designation**

4        Plaintiff's claims against Defendants Kunkel, Harry, Williams, Egeline, Arballo, Neumann,

5  Clarke, and Miller concern her assignment to MHSDS and do not arise out of the same transaction,

6  occurrence or series of transactions or occurrences that have been found to be cognizable in this

7  action. Fed. R. Civ. P. 20. Plaintiff's claim regarding her MHSDS designation does not contain

8  common questions of law or fact to the failure to protect and retaliation claims found to be

9  cognizable. Since this claim is unrelated to the failure to protect and retaliation claims found to be

10  cognizable in this action, the claim should be dismissed without leave to amend. Accordingly,

11  Defendants Kunkel, Harry, Williams, Egeline, Arballo, Neumann, and Clark are not properly joined

12  in this action and should be dismissed. Fed. R. Civ. P. 21.

13        **H.**    **Declaratory Relief**

14        In addition to money damages, Plaintiff seeks a declaration that her rights were violated. "A

15  declaratory judgment, like other forms of equitable relief, should be granted only as a matter of

16  judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village,

17  333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful

18  purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford

19  relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759

20  F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a

21  verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were

22  violated. Accordingly, a declaration that Defendants violated Plaintiff's rights is unnecessary, and

23  Plaintiff's claim for declaratory relief should be dismissed, without leave to amend.

24        **I.**    **Injunctive Relief**

25        Plaintiff requests injunctive relief to have records removed from her file, and all copies of

26  such records recalled from other agencies or departments, honor Plaintiff's right to refuse mental

27  health designation and remove her name from the mental health list, cease issuing unsolicited passes

28  to MHSDS, expunge all MHSDS records from her file, cease ordering Plaintiff to cell with violent

1    mentally ill inmates, and provide protective housing or a transfer to Corona.

2          For each form of relief sought in federal court, Plaintiff must establish standing.  Mayfield

3    v. United States, 599 F.3d 964, 969 (9th Cir. 2010), cert.denied, 131 S. Ct. 503 (2010). This requires

4    Plaintiff to "show that he is under threat of suffering 'injury in fact' that is concrete and

5    particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be

6    fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial

7    decision will prevent or redress the injury." Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149

8    (2009) (citation omitted); Mayfield, 599 F.3d at 969 (citation omitted).

9          In addition, any award of equitable relief is governed by the Prison Litigation Reform Act,

10   which provides in relevant part, "Prospective relief in any civil action with respect to prison

11   conditions shall extend no further than necessary to correct the violation of the Federal right of a

12   particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless

13   the court finds that such relief is narrowly drawn, extends no further than necessary to correct the

14   violation of the Federal right, and is the least intrusive means necessary to correct the violation of

15   the Federal right."  18 U.S.C. § 3626(a)(1)(A).

16         Most of the orders sought by Plaintiff in this action cannot be issued even were Plaintiff to

17   prevail on her failure to protect and retaliation claims.  For example, past misconduct usually does

18   not confer standing to seek an order aimed at preventing future harm. City of Los Angeles v. Lyons,

19   461 U.S. 95, 111, 103 S. Ct. 1660 (1983); Mayfield, 599 F.3d 970.  In addition, the pendency of this

20   action does not entitle Plaintiff to the issuance of orders to expunge records, or change her MHSDS

21   or custody status.

22   **IV.   Conclusion and Recommendation**

23         Plaintiff's second amended complaint sets forth a cognizable claim Defendants Keith, Logan,

24   Gerber, and Mason for failure to protect in violation of the Eighth Amendment, but does not state

25   any other claims for relief under section 1983.  Under Rule 15(a) of the Federal Rules of Civil

26   Procedure, leave to amend 'shall be freely given when justice so requires,'" Fed. R. Civ. P. 15(a),

27   and "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the

28   defect," Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted).  Plaintiff

should be granted a final opportunity to file an amended complaint to cure the deficiencies described in this order.  Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Defendants Kunkel, Harry, Williams, Egeline, Arballo, Neumann, and Clark be dismissed from this action, without leave to amend, as improperly joined under Federal Rules of Civil Procedure 18 and 20;

2.    Plaintiff's claims based upon her MHSDS designation be dismissed from this action, without leave to amend; and

3.    Plaintiff be required to either:

   a.    File an amended complaint curing the deficiencies identified by the Court in this order, or

   b.    Notify the Court in writing that she does not wish to file an amended complaint and is willing to proceed only against Defendants Keith, Logan, Gerber, and Mason for failure to protect in violation of the Eighth Amendment.[2]

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __June 18, 2012__          _____/s/ **Barbara A. McAuliffe**_____
                                                   UNITED STATES MAGISTRATE JUDGE

---

[2]Plaintiff is advised that she has not been granted leave to file an amended complaint.  Once an order addressing the findings and recommendations issues, Plaintiff will be advised to respond.